# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone<br>Seized as DEA Non-Drug Exhibit N-5<br>Case No. R3-20-0058 | Case No. **20-mj-3581** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952 and 960 | Importation of a Controlled Substance |
| 21 U.S.C. Sec. 963 | Conspiracy to Commit the Same |

The application is based on these facts:
See Attached Affidavit of DEA Special Agent Suzzette S. Abbasciano, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Suzzette S. Abbasciano, Special Agent DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: August 25, 2020

_____
*Judge's signature*

City and state: San Diego, California

Hon. Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, SPECIAL AGENT Suzzette S. Abbasciano, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices (collectively, "**Target Devices**")

- Black iPhone
  (Seized as DEA Non-Drug Exhibit N-5)
  "**Target Device A-1**"
- Green iPhone
  (Seized as DEA Non-Drug Exhibit N-6)
  "**Target Device A-2**"
- Silver MacBook
  (Seized as DEA Non-Drug Exhibit N-7)
  "**Target Device A-3**"
- White iWatch with Brown Stripes
  (Seized as DEA Non-Drug Exhibit N-8)
  "**Target Device A-4**"
- White Seagate External Hard Drive – SN 2GE2SD8L
  (Seized as DEA Non-Drug Exhibit N-9)
  "**Target Device A-5**"
- Black Western Digital External Hard Drive – SN WX82A20LJ3X3
  (Seized as DEA Non-Drug Exhibit N-10)
  "**Target Device A-6**"
- Black Thumb Drive
  (Seized as DEA Non-Drug Exhibit N-11)
  "**Target Device A-7**"

as further described in Attachments A-1 through A-7, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Violet Liliana CISNEROS and Miguel Angel OLARRA, for importing approximately 2.2 kilograms (4.85 pounds) of fentanyl and approximately 2.24 kilograms (4.94 pounds) of heroin from Mexico into the United States. The **Target Devices** are

currently in the custody of the Drug Enforcement Administration ("DEA") and located at 4560 Viewridge Ave, San Diego, CA 92123.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18 United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to initiate arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

4. I am a Special Agent ("SA") employed by the DEA, and have been so employed since January 2018. I am currently assigned to the San Francisco Field Division. I am authorized and am presently assigned to investigate violations of the Controlled Substance Act ("CSA"), Title 21, of United States Federal Code, and other violations of federal law.

5. Prior to becoming a DEA Special Agent, I was a crisis response analyst with Uber Technologies Inc. In this capacity, I assessed Uber's responses to crises related to terrorist and organized crime attacks, natural disasters, and other major emergency events. I also updated and developed protocols and risk assessments to assist in Uber's mission to complement the emergency services of a given location. Prior to working with Uber, I served as a crisis response analyst with the North Atlantic Treaty Organization ("NATO"), where I assisted in developing large scale military exercises for Alliance, including at the Defense Minister and Ambassador levels, which took into account threats posed by terrorist and organized criminal networks. I was also a research analyst and project manager with the National Consortium for the Study of Terrorism and Responses to Terrorism ("START"), a Department of Homeland Security Center of Excellence, focused on

2

analyzing a potential terrorism-organized crime nexus in relation to radiological and nuclear material trafficking. With START I conducted risk assessments on over 200 terrorist or organized crime groups, helped develop interactive GIS materials on groups' trafficking routes, and conduct network analysis to identify trafficking hot spots in South and Central America and Europe.

6. I have had the opportunity to work on multiple organized crime, illicit trafficking, and terrorism related grants, and to conduct international field work as a criminology doctoral student. Through these opportunities I have been able to speak extensively with experienced law enforcement, military and intelligence officers, and researchers about illicit trafficking networks and their smuggling routes and methods. I have collected, organized, and analyzed material related to drug trafficking network structures, leadership hierarchies, group composition and skill sets, and their relationships with supporting and rival groups.

7. During my employment with the DEA, I have received nineteen weeks of full time formalized education, training, and experience at the DEA Basic Agent Training Academy in Quantico, Virginia. This education, training, and experience included but was not limited to drug detection, drug interdiction, money laundering techniques, and schemes and investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. As a Special Agent, I have participated in multiple narcotics investigations either as a case agent or in a supporting role. I have debriefed defendants, confidential sources, and witnesses who had personal knowledge regarding narcotics trafficking organizations. I also have participated in many aspects of drug investigations including, but not limited to, telephone toll analysis, and records research, physical and electronic surveillance. I have participated in the execution of several federal and state narcotics search and arrest warrants that resulted in the arrest of suspects and seizure of narcotics. In addition, I have attended seminars and courses on money laundering and internet investigations related to drug trafficking.

8. Through my training, education, experience, and my conversations with other

agents and officers who conduct drug investigations, I have become familiar with narcotics traffickers' use of mobile telephones and mobile telephone applications, Internet applications, social media applications, as well as narcotics traffickers' use of numerical codes and code words to conduct business. I have become familiar with narcotics traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of narcotics, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

9. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones, computers, and other electronic devices. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry, such as the San Ysidro Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

10. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) and other electronic devices can and often do contain electronic evidence, including, for

example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones and other electronic devices of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. At approximately 3:15AM on August 12, 2020, Violet Liliana CISNEROS and Miguel Angel OLARRA applied for entry to the United States through the San Ysidro Port of Entry vehicle lanes in a black Toyota Tacoma, bearing CA license plate 42347P2. OLARRA was the driver of the vehicle and CISNEROS was the sole passenger. Upon their application for entry, CISNEROS and OLARRA stated that they were United States citizens and were traveling to Orange, CA to see family. At that time, Customs and Border

5

Protection Officer ("CBPO") Catalina Noguez obtained two negative customs declarations from each defendant. CISNEROS advised CBPO Noguez that the two pieces of luggage in the vehicle contained clothes.

12. A Human and Narcotic Detection Dog ("HNDD") walked around the vehicle and alerted to the presence of narcotics in CISNEROS and OLARRA's luggage. When CBP officers further inspected this luggage, they found two packages concealed under the false bottom of each bag. A sample of the substances contained within the packages field-tested positive for the properties of fentanyl and heroin, respectively.

13. CISNEROS and OLARRA were placed under arrest at approximately 3:30AM and charged with a violation of Title 21, United States Code sections 952 and 960 for Importation of a Controlled Substance and were transported by DEA SAs Jose Ortiz and Justin Dion to the Metropolitan Correctional Center (MCC).

14. The **Target Devices** were found amongst the personal effects belonging to CISNEROS and OLARRA inside of the Toyota Tacoma and/or on their person, and were seized at the time of arrest. During the interview, CISNEROS and OLARRA were each shown the **Target Devices**. CISNEROS and OLARRA each identified the **Target Devices** belonging to him/her.

15. OLARRA identified the green iPhone ("Target Device A-2") and the black iWatch ("Target Device A-4") as belonging to him. CISNEROS identified the black iPhone ("Target Device A-1"), silver MacBook ("Target Device A-3"), white Seagate external hard drive ("Target Device A-5"), black Western Digital external hard drive ("Target Device A-6"), and black thumb drive ("Target Device A-7") as belonging to her.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that CISNEROS and

OLARRA were using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendants' arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as CISNEROS and OLARRA, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on July 13, 2020, up to and including August 13, 2020.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, or that of other electronic devices, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices and other electronic devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure

7

1 may be so acquired. For devices that are not subject to forensic data acquisition or that have
2 potentially relevant data stored that is not subject to such acquisition, the examiner must
3 inspect the device manually and record the process and the results using digital
4 photography. This process is time and labor intensive and may take weeks or longer.

5     18. Following the issuance of this warrant, I will collect the **Target Devices** and
6 subject it to analysis. All forensic analysis of the data contained within the telephone and
7 its memory cards will employ search protocols directed exclusively to the identification
8 and extraction of data within the scope of this warrant.

9     19. Based on the foregoing, identifying and extracting data subject to seizure
10 pursuant to this warrant may require a range of data analysis techniques, including manual
11 review, and, consequently, may take weeks or months. The personnel conducting the
12 identification and extraction of data will complete the analysis within ninety (90) days of
13 the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

15     20. Law enforcement has not previously attempted to obtain the evidence sought
16 by this warrant.

## CONCLUSION

19     21. Based on the facts and information set forth above, I submit there is probable
20 cause to believe that a search of the Target Device will yield evidence of Defendant's
21 violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I
22 request that the Court issue a warrant authorizing law enforcement to search the item
23 described in Attachment A-1 through A-7 and seize the items listed in Attachment B using
24 the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
SPECIAL AGENT Suzzette S. Abbasciano
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __25__ day of August, 2020.

_____
HONORABLE BERNARD G. SKOMAL
United States Magistrate Judge

9

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black iPhone
    Seized as DEA Non-Drug Exhibit N-5
    ("Target Device A-1")

The Target Device is currently in the possession of Drug Enforcement Administration and located at 4560 Viewridge Ave, San Diego, CA 92123, under unique case number R3-20-0058.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1 and A-2; laptop described in Attachment A-3; watch described in A-4; external hard drives described in Attachments A-5 and A-6; and thumbdrive described in Attachment A-7; includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone and electronic devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 13, 2020, up to and including August 13, 2020:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and heroin, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device(s)**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.